IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

OSBORN ERNIE WILSON,                    §
                                        §
            Plaintiff,                  §
                                        §
v.                                      §          CIVIL ACTION NO. H-07-1140
                                        §
TOMMY THOMAS, *et al.*,                 §
                                        §
            Defendants.                 §

## MEMORANDUM AND ORDER

Osborn Ernie Wilson (TDCJ #600236, former Harris County #783171) has filed a

complaint under 42 U.S.C. § 1983, alleging violations of his civil rights in connection with

his arrest by a Harris County Sheriff's Deputy.  At the Court's request, Wilson has also

provided a more definite statement of his claims.  (Doc. # 8).  The defendants have filed a

joint motion for summary judgment.  (Doc. # 25).  The plaintiff has not filed a response to

the motion and his time to do so has expired.  After reviewing all of the pleadings, the

summary judgment record, and the applicable law, the Court grants the defendants' motion

and dismisses this case for reasons that follow.

## I.    BACKGROUND

Wilson sues Harris County Sheriff Tommy Thomas and Harris County Sheriff's

Deputy Matthew Dunn.[1]  Wilson's complaint stems from his arrest late in the evening on

---

[1]     The complaint identifies "Deputy Sheriff McDunn" as the second defendant.  The Court will
use his correct name, Matthew Dunn will refer to him as Deputy Dunn.

November 13, 2006.  Wilson claims that Deputy Dunn shot at him as he stood in the street near his truck.  In fear for his life, Wilson states that he jumped in his truck and fled.  "About two lights down" the street, Wilson abandoned the truck, which then "rolled by itself" into a nearby ditch.  Wilson claims that, while he was laying face down on the ground, Deputy Dunn started hitting him with his nightstick and his fists.  Wilson contends further that he was not taken to the hospital, but was instead taken to the Harris County Jail.

As a result of his arrest on November 13, 2006, Wilson was charged with burglary of a building, evading arrest with a motor vehicle and aggravated assault against a public servant.  The State also filed a motion was to revoke Wilson's parole from a prison sentence that he had received for a prior felony conviction.  Wilson ultimately pleaded guilty to the charge of burglary of a building and the other charges were dismissed.

Wilson claims that deadly force was unnecessary and that Deputy Dunn violated his constitutional rights by shooting at him.  Wilson also claims Deputy Dunn used excessive force by striking him and punching him during the arrest.  Wilson complains that Sheriff Thomas is "negligent in training" his deputies and that, as a result, Deputy Dunn violated his constitutional rights by using force in excess of the need.  Wilson complains further that he was denied adequate medical care for his injuries.   Wilson seeks $35,000,000 in compensatory damages and $10,000,000 in punitive damages.[2]  The defendants have filed

---

[2]     Wilson also seeks declaratory and injunctive relief in the form of dismissal of the criminal charges against him.  The Court notes that Wilson was convicted of those charges and sentenced to six months in prison.  The record reflects that Wilson has been released from custody already and he does not appear to have filed any sort of appeal.  Under these

(continued...)

a motion for summary judgment, arguing that Wilson is not entitled to relief.  (Doc. # 25).

The parties' contentions are discussed further below under the governing standard of review.

## II.     STANDARD OF REVIEW

Because Wilson filed the complaint while he was incarcerated in the Harris County

Jail, this case is governed by the Prison Litigation Reform Act (the "PLRA"), which

mandates the dismissal of a prisoner's civil rights complaint under the following

circumstances.  Upon initial screening of a prisoner civil rights complaint, the PLRA requires

a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it

determines that the complaint "is frivolous, malicious, or fails to state a claim upon which

relief may be granted;" or "seeks monetary relief from a defendant who is immune from such

relief."  28 U.S.C. § 1915A(b).  A reviewing court may dismiss a complaint for these same

reasons "at any time" where a party proceeds *in forma pauperis*.  28 U.S.C. § 1915(e)(2)(B)

(mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim

upon which relief may be granted," or "seeks monetary relief from a defendant who is

immune from such relief").  The PLRA also provides that the court "shall on its own motion

---

[2](...continued)
circumstances, Wilson's claims for declaratory and injunctive relief appear moot. Alternatively, to the extent that Wilson challenges his conviction, this claim sounds in habeas corpus and not civil rights.  It is well settled that an action under 42 U.S.C. § 1983 is the appropriate legal vehicle to attack unconstitutional conditions of confinement.  *See Cook v. Texas Dep't of Criminal Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994).  By contrast, the writ of habeas corpus is the appropriate federal remedy for a state prisoner challenging the "fact of confinement."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Because he is no longer in custody, the Court declines to address Wilson's claims for declaratory or injunctive relief further.

or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

The defendants have filed a motion for summary judgment, arguing that the plaintiff's claims fail as a matter of law. Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir. 2006).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted). Facts and inferences reasonably drawn from those facts should be taken in the light

4

most favorable to the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995). Although the plaintiff proceeds *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

The plaintiff has not filed a response to the motion for summary judgment and the time for him to do so has expired.[3]  According to this Court's local rules, responses to motions are due within twenty days, S.D. TEX. R. 7.3, unless the time is extended.  Any failure to respond is taken as a representation of no opposition.  S.D. TEX. R. 7.4.  The Court specifically directed the plaintiff to respond within thirty days to any dispositive motion filed by the defendants or face dismissal for want of prosecution.   (Doc. # 10, ¶ 5).  Notwithstanding the plaintiff's failure to respond, summary judgment may not be awarded by default.  *See Hibernia Nat'l Bank v. Administration Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).  "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule."  *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279).  In that regard, the movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the reviewing court may not grant the motion regardless of whether any response was filed.  *See Hetzel*, 50 F.3d at 362 n.3.  Nevertheless, in determining whether summary judgment is warranted, the district court may accept as undisputed the facts set forth in the unopposed motion. *See Beard v. Banks*, — U.S. —, 126 S. Ct. 2572, 2577 (2006); *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

---

[3]     The Court notes that, according to the certificate of service, the defendants provided the plaintiff with a copy of their motion for summary judgment by sending a copy to his current address, as shown in the record.

III.   **DISCUSSION**

Wilson complains that his civil rights were violated during his arrest on November 13, 2006.  Wilson's civil rights complaint is governed by 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To establish liability under § 1983, a civil rights plaintiff must establish two elements:  (1) state action, *i.e.*, that the conduct complained of was committed under color of state law, and (2) a resulting violation of federal law, *i.e.,* that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Baker v. McCollan*, 443 U.S. 137, 142 (1979); *see also Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (In short, "[s]ection 1983 provides a claim against anyone who, 'under color of' state law, deprives another of his or her constitutional rights.") (citing *Doe v. Taylor Indep. Sch. Dist*., 15 F.3d 443, 452 (5th Cir. 1994)).  Further, a plaintiff asserting a § 1983 cause of action against government officials must make specific factual allegations that support each individual defendants' role in the constitutional deprivation at issue.  *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).

The only defendants in this case are Harris County Sheriff Tommy Thomas and Harris County Sheriff's Deputy Dunn.  As outlined above, Wilson claims that Deputy Dunn violated

his civil rights by using unnecessary deadly force and by using excessive force during his arrest. Wilson alleges that he was then denied adequate medical care following his arrest and incarceration at the Harris County Jail. Wilson complains that Sheriff Thomas is liable for negligently training Deputy Dunn. These claims are addressed below, beginning with Wilson's allegation that he was denied adequate medical care following his arrest.

### A.      Denial of Adequate Medical Care

Wilson does not blame any particular defendant or other official for denying him access to adequate medical care in this instance. The defendants argue, nevertheless, that Wilson's allegation that he was denied adequate medical care following his arrest fails as a matter of law. To the extent that Wilson alleges that he was denied medical care at the Harris County Jail, the defendants contend that Wilson did not exhaust available administrative remedies as required with respect to this claim. Alternatively, the defendants argue further that Wilson fails to show that he was actually denied care following his arrest. The Court considers these arguments in turn.

### 1.      Exhaustion of Administrative Remedies

The defendants argue that Wilson's claims concerning his medical care are barred from review because he failed to comply with the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), by presenting his claims for consideration by Harris County officials before filing suit. Under the PLRA, codified as amended at 42 U.S.C. § 1997e(a), an inmate is required to exhaust administrative remedies for all "action[s] . . . brought with respect to prison conditions" before filing a civil rights suit in federal court under 42 U.S.C.

§ 1983 or "any other Federal law."  The Supreme Court has held repeatedly that § 1997e(a) requires exhaustion of *all* administrative procedures before an inmate can sue in federal court.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the PLRA requires exhaustion of all claims concerning prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong).  To the extent that Wilson's complaint concerns the conditions of his confinement or his treatment at the Harris County Jail, the exhaustion requirement found in the PLRA applies to his claims.[4]

The defendants provide a copy of the Harris County Inmate Handbook, which details the administrative grievance procedure in place at the Harris County Jail.  (Doc. # 25, Exhibit 4).  The Harris County Sheriff's Department has a three-step grievance process that allows all persons in custody at the Jail the opportunity to attempt informal resolution, followed by a formal grievance and then an appeal, if necessary, consistent with procedures outlined in the Inmate Handbook.  According to the Inmate Handbook, a copy of which was provided

---

[4]  The defendants appear to argue that the entire complaint is barred by Wilson's failure to exhaust administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a).  As the Supreme Court has explained, however, the exhaustion requirement found in the PLRA applies only to "prison conditions," which means that "preincarceration claims fall outside § 1997e(a)," including claims against an arresting officer. *Porter v. Nussle*, 534 U.S. 516, 529 (2002).  Therefore, to the extent that it is unclear from the defendants' motion, the exhaustion requirement does not apply to Wilson's claim that excessive force was used during his arrest or his claim that Sheriff Thomas is responsible for negligent training on the use of force.

9

to Wilson upon his admission to the Jail,[5] inmates are instructed to "first try to solve the problem with the Deputy or Staff Member on duty."  If informal means of resolution do not result in a solution, inmates "may then file a Grievance."  If a formal grievance is not resolved at this initial level following an investigation, it goes to a hearing before the Inmate Grievance Board.  The inmate will be notified of the Grievance Board's decision in writing within fifteen days.  If the inmate disagrees with the findings of the Grievance Board, then the inmate is instructed to appeal that result to the Captain of the Inmate Affairs Division.

The defendants have provided copies of Wilson's grievance records.  (Doc. # 25, Exhibit 5).  The record shows that Wilson filed a grievance on December 14, 2006, complaining that excessive force was used against him during his arrest, that he had been denied medical care for his injuries, and that he had been denied a wheelchair.  On December 19, 2006, this grievance (Grievance #4041) was forwarded to the Inmate Affairs and Grievance Board for investigation.  Sergeant Joe T. Coward interviewed Wilson on January 2, 2007, as part of the grievance investigation process.  After completing his investigation, Sergeant Coward considered Wilson's claims that he was denied adequate medical care and concluded that the grievance was "unfounded."  The record reflects that Wilson refused to sign the Grievance Resolution Form.  Nevertheless, Wilson did not complain further and,

---

[5]     The defendants present Wilson's custodial records from the Harris County Jail, which show that he received a copy of the Inmate Handbook that outlines the grievance procedure when he was booked into the Jail on November 13, 2006.  (Doc. # 25, Exhibit 3).  These records show that this was not Wilson's first admission to the Harris County Jail or the criminal justice system; he had numerous prior arrests and criminal convictions from Harris County. In fact, Wilson was on parole at the time of the offense that led to his arrest on the night of November 13, 2006.

although he remained in custody at the Harris County Jail until his transfer to the Texas Department of Criminal Justice on July 6, 2007, Wilson did not pursue an appeal prior to filing his civil rights complaint in federal court on April 4, 2007.

This record shows that Wilson did not complete the available grievance procedure. In that respect, there is no evidence that Wilson was dissatisfied with the administrative response to his initial grievance and there is no record that Wilson filed the requisite appeal to challenge the result that he received. A prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement. *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)). Because Wilson did not complete the entire administrative grievance process available at the Harris County Jail, he did not exhaust his remedies. *See id.*

The Supreme Court has emphasized that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2387 (2006), which demands compliance with prison procedural rules. As the Supreme Court has recognized, "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 524. By requiring exhaustion of administrative remedies, Congress hoped that "corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* (citing *Booth*, 532 U.S. at 737). In addition to filtering out potentially

11

frivolous claims, Congress also believed that internal review would facilitate adjudication of cases ultimately brought to court by giving prison officials an opportunity to develop an administrative record that clarifies the contours of the controversy. *Id.* (citations omitted).

Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an institution's procedural rules. *See Woodford*, 126 S. Ct. at 2389-90. By failing to complete the grievance procedure in place at the Harris County Jail, Wilson bypassed available administrative remedies. *See Carbe v. Lappin*, 492 F.3d 325, 238 (5th Cir. 2007). This violates the PLRA's exhaustion requirement found in § 1997e(a), which mandates exhaustion *before* filing suit. *See Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (affirming the dismissal even under circumstances that would seem "inefficient"). Accordingly, the defendants are entitled to summary judgment on this issue and Wilson's claim concerning the denial of medical care following his arrest must be dismissed.

### 2.    Wilson was not Denied Medical Care

Alternatively, the record reflects that Wilson was not denied medical care following his arrest or while he was a pretrial detainee in custody of Harris County. To prevail under 42 U.S.C. § 1983 in this context, Wilson must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution.[6]

---

[6]    Although he was on parole, it is undisputed that Wilson was a pretrial detainee at the time that he was allegedly denied medical care. The Fifth Circuit has recognized that there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care. *See Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. (continued...)

"Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate … medical care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter*, 467 F.3d at 463 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

The Eighth Amendment deliberate-indifference standard has both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish deliberate indifference under this standard, the prisoner must show that the defendants were both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *See id.* at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a

---

[6](...continued)
    2001) (citing *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc)). Accordingly, the same standard governs constitutional claims concerning medical care by pretrial detainees and convicted inmates. *See id*.

substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id*. (citations omitted).  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (citations omitted).

The record refutes Wilson's claim that he was denied medical care.  The record shows that Wilson was examined by EMS workers at the scene of his arrest on November 13, 2006. (Doc. # 25, Exhibit 7).  EMS personnel examined Wilson and determined that he had not suffered any major injuries.  Because he did not require hospitalization, EMS workers released Wilson to the custody of Harris County Sheriff's Deputies, who transported Wilson to the Jail.

At the Jail, Wilson was screened by an intake nurse and referred to a physician for a medical examination.  (Doc. # 25, Exhibit 3). On November 14, 2006, Wilson complained of pain in his left arm and ribs on the left side.  X-rays were taken and Wilson was given medication (Ibuprofen) for his pain.  Wilson had a follow-up evaluation by a physician on November 22, 2006.  The x-rays revealed a fracture to the "anterior aspect of the 11th rib and possibly the 12th rib," but no injury to Wilson's left arm.  Wilson was told that the fractures

14

would heal on their own and that he did not require surgery or hospitalization. Wilson was prescribed pain medication (Ibuprofen and Vicodin) for pain and scheduled to see the physician again on November 29, 2006.  On November 29, 2006, Wilson refused his appointment.

Citing pain in his ribs, Wilson requested a wheelchair on December 7, 2006.  Wilson was evaluated by a physician, who declined to issue a wheelchair.  On December 20, 2006, Wilson again requested a wheelchair, as well as pain medication and a brace for his ribs.  On December 22, 2006, an appointment was scheduled for December 28, 2006.  On that date, Wilson was examined by a physician who noted only mild tenderness with palpation of the ribs and concluded that there was no need for a wheelchair.  Wilson did not request any further medical care and he was not seen in the clinic again until June 4, 2007, when he was treated for a boil on his right knee.  Wilson was transported to TDCJ shortly thereafter on July 6, 2007.

In addition to Wilson's medical records, the defendants have provided an affidavit from Harris County Jail Medical Administrator Bobby Davis, who reviewed the record of Wilson's treatment following his arrest and detention.  (Doc. # 25, Exhibit 6, Affidavit of Bobby Davis).  Davis notes that the Jail has policies and procedures to provide for the medical needs of inmates in the Jail, which includes policies for the provision of care and treatment for medical, mental health, optometry, dental, and dietary needs.  (*Id.*).  Medical services available at the Jail are outlined and explained in the Inmate Handbook, which is given to each inmate entering the Jail.  Davis notes that the medical policies in place at the

15

Harris County Jail and enforced by the Harris County Sheriff's Department have been approved by the Texas Commission on Jail Standards and the National Commission on Correctional Health Care ("NCCHC"). Davis states that, based on his years of experience working in the Jail, these policies do not prevent providing appropriate medical care to the inmates. Davis concludes that there is nothing in the medical records to indicate that Wilson failed to receive any necessary medical care in the Jail. In Davis's opinion, Wilson received appropriate and adequate medical care at all times in the Jail.

Wilson has not filed a response to the summary judgment motion. Wilson does not otherwise allege or show that he was denied care. Instead, Wilson appears to complain about the care that he received. To the extent that Wilson disagrees with the level of care that he received, the Fifth Circuit has held repeatedly that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977). Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not deliberate indifference. *See Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). Thus, allegations of negligence and medical malpractice will not suffice to demonstrate an Eighth Amendment violation. *See Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001); *see also Stewart*, 174 F.3d at 534

16

("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not.").

Wilson does not allege facts showing that he was refused care or that Harris County personnel intentionally treated him incorrectly with wanton disregard for his medical condition.  At most, Wilson's conclusory allegations amount to mere negligence and not deliberate indifference.  As such, Wilson's allegations are not sufficient to establish a violation of the Eighth Amendment.  Because Wilson has failed to raise a genuine issue of material fact on whether he was denied adequate medical care, the defendants are entitled to summary judgment on this issue.

### B.        Use of Force Claims

The defendants argue that Dunn is entitled to qualified immunity from Wilson's claim that deadly force was used improperly or that excessive force was otherwise used during his arrest.  Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity.  *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions."  *Cozzo v. Tangipahoa Parish Council – President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cty.,* 245 F.3d 447, 456 (5th Cir. 2001)).  "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, this Court must conduct a bifurcated analysis. *See, e.g., Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004), *cert. denied*, 547 U.S. 1055 (2006). The threshold question has two parts. The initial inquiry asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right. *See Scott v. Harris*, — U.S. —, —, 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). If the defendant's actions violated a clearly established constitutional right, the final step of the analysis asks whether qualified immunity is appropriate, nevertheless, because the defendant's "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537 (citations omitted).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id*. The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id*.

18

In this instance, Deputy Dunn argues that Wilson has failed to establish a violation of his constitutional rights.  He argues further that, even if a violation occurred, his actions were objectively reasonable under the circumstances.  At the summary judgment stage of this case, a determination whether a constitutional right was violated for purposes of the first prong of the qualified immunity analysis overlaps substantially with a determination whether Wilson's claim lacks merit.  Accordingly, the Court first addresses whether Wilson has raised a genuine issue of material fact on whether Deputy Dunn committed a constitutional violation by using deadly force or force in excess of the amount necessary during he arrest.

### 1.      Use of Force During an Arrest

Wilson alleges that Deputy Dunn used deadly force against him when it was unnecessary to do so and that excessive force was used to effect his arrest.  The Fourth Amendment to the United States Constitution guarantees citizens the right "to be secure in their persons" and prohibits "seizures" that are "unreasonable."  Therefore, the Supreme Court has emphasized that "*all* claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard rather than under a 'substantive due process' approach."  *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original).[7]  The "'reasonableness' inquiry" contemplated

---

[7]      "A 'seizure' that triggers the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen[.]" *Graham*, 490 U.S. at 395, n.10 (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968) (citations omitted)).

in this context is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. To prevail under this standard, the Fifth Circuit requires a plaintiff to show (1) that he suffered an injury; (2) which resulted "directly and only from the use of force that was clearly excessive to the need[;]" and (3) the force used was "objectively unreasonable." *Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007) (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

Determining whether the force used to effect a particular seizure is reasonable requires a "careful balancing" of interests, including "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against "the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quotations omitted). The Supreme Court has "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (citation omitted). While not capable of precise definition or mechanical application, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

For example, the Supreme Court has recognized that a certain amount of force is obviously reasonable when a police officer apprehends a dangerous, fleeing suspect. *See Scott v. Harris*, — U.S. —, 127 S. Ct. 1769 (2007); *Tennessee v. Garner*, 471 U.S. 1, 3

20

(1985).  In gauging excessiveness and objective unreasonableness, the Supreme Court has

held that while deadly force may not be used against all fleeing felons, it is acceptable when

"necessary to prevent . . . escape and the officer has probable cause to believe that the suspect

poses a significant threat of death or serous physical injury to the officer or others."  *Garner*,

471 U.S. at 3.  The Supreme Court has described circumstances in which the use of deadly

force is considered "constitutionally reasonable" to stop a fleeing suspect as follows:

> Where the officer has probable cause to believe that the suspect poses a threat
> of serious physical harm, either to the officer or to others, it is not
> constitutionally unreasonable to prevent escape by using deadly force. Thus,
> if the suspect threatens the officer with a weapon or there is probable cause to
> believe that he committed a crime involving the infliction or threatened
> infliction of serious physical harm, deadly force may be used if necessary to
> prevent escape, and if, where feasible, some warning has been given.

*Garner*, 471 U.S. at 11-12.  As the Supreme Court has clarified, "[w]hether or not [an

officer's] actions constituted application of 'deadly force,' all that matters is whether [the

officer's] actions were reasonable."  *Harris*, 127 S. Ct. at 1778.  When reviewing the issue

of reasonableness, the Supreme Court has cautioned that courts are to judge an officer's acts

from the perspective of a reasonable officer on the scene and not "the 20/20 vision of

hindsight."  *Graham*, 490 U.S. at 396.  The reasonableness inquiry "must embody allowance

for the fact that police officers are often forced to make split-second judgments — in

circumstances that are tense, uncertain, and rapidly evolving — about the amount of force

that is necessary in a particular situation."  *Id.* 396-97.

In this case, the defendants argue that Wilson fails to show that Deputy Dunn used

excessive force or acted unreasonably under the circumstances and that he further fails to

show that an injury resulted directly and only from a use of force that was clearly excessive to the need.  As outlined in his affidavit, Deputy Dunn encountered Wilson while alone on patrol on the night of November 13, 2006, after he was dispatched to investigate a "possible burglary in progress."  (Doc. # 25, Exhibit 7, Affidavit of Matthew Dunn).  When Deputy Dunn arrived at the location, he observed Wilson and another suspect loading tires into the bed of their truck.  With his shotgun drawn, Deputy Dunn ordered the men to show their hands and move to the front of the truck so that he could identify them and visually check for weapons.  Both suspects disobeyed Deputy Dunn's repeated orders to approach with their hands in the air.  The other suspect, who Wilson has not identified, bolted from the rear of the truck and fled down the road.  Because the fleeing suspect quickly turned, Deputy Dunn believed that the suspects would surround him.  As Deputy Dunn attempted to keep visual contact on both suspects, he heard "two rapid gunshots coming from where Wilson was standing."  Fearing for his safety, Deputy Dunn fired two rounds at the truck, striking the front bumper and the front grill, in an attempt to stop Wilson from fleeing the scene.

Notwithstanding the exchange of gunfire, Wilson jumped into the truck and drove off at a rapid pace.  Deputy Dunn alerted dispatch about the fleeing suspects and initiated pursuit, but lost sight of Wilson, who was traveling "at a high rate of speed[.]"  Deputy Dunn then observed that Wilson had "wrecked" the truck by crashing into a ditch.  The truck was unoccupied when Deputy Dunn arrived.  Two other deputies pursued Wilson as he attempted to flee on foot, apprehending him fifty feet from the wrecked truck.  Due to the severity of the wreck, Emergency Medical Services ("EMS") was dispatched to check for injuries. EMS

22

workers examined Wilson, who "showed no signs of any major injuries" and, therefore, he was released into custody of the Sheriff's Department at the scene.

This record reasonably establishes without contradiction that Deputy Dunn heard gunshots come from where Wilson was standing and assumed that Wilson was armed. Deputy Dunn was on patrol by himself late at night when he encountered the two burglary suspects, both of whom refused to obey orders to show their hands, which made Deputy Dunn's perception of a serious threat more reasonable.  Deputy Dunn's decision to shoot at Wilson's truck once Wilson refused to comply with his instructions and the suspects began to flee the scene was reasonably based on his belief that Wilson posed an immediate threat to himself and possibly to the public.  Deputy Dunn was not obligated to allow Wilson to escape arrest under these circumstances.  *See Harris*, 127 S. Ct. at 1778 ("We think the police need not have [ceased pursuit of a fleeing suspect] and hoped for the best.").  Given the brief period of time that an officer has to react to a perceived threat such as the one presented in this case, it was reasonable to respond with deadly force.  *See Graham*, 490 U.S. at 396-97.  Thus, in light of the facts known at the time, Deputy Dunn's decision to fire his weapon at Wilson's vehicle was reasonable and did not constitute excessive use of deadly force.[8]

---

[8]     In addition, the Court notes that Wilson does not demonstrate that he suffered an injury as a result of the alleged use of deadly force.  To prevail on a claim that excessive force was used, a plaintiff must establish that he suffered "an injury" as a direct result of the force.  *See Bazany*, 507 F.3d at 320.

Wilson also alleges that Deputy Dunn used excessive force by striking him with his nightstick and punching him with his fists after he was apprehended. Deputy Dunn denies assaulting Wilson or causing any injury to him during the arrest. The injuries that Wilson sustained, according to Deputy Dunn, occurred when Wilson crashed his truck while in flight in an attempt to avoid arrest. Wilson's medical records support Deputy Dunn's account. (Doc. # 25, Exhibit 3). EMS workers who examined Wilson at the scene observed no major injuries. Intake records at the Jail show that Wilson complained primarily of an injury to his ribs. His medical records from the Jail show that, at most, Wilson fractured two ribs which required limited medical care. The records do not show that Wilson suffered any additional injuries from allegedly being severely beaten with a nightstick or punched with fists, as Wilson claims. To the extent that Wilson sustained injury when he crashed his truck into the ditch while attempting to evade arrest, the element of causation for a § 1983 claim against Deputy Dunn is lacking. *See Bazany*, 507 F.3d at 320 (noting that a plaintiff must show an injury which "resulted directly and only from the use of force"). Absent a showing that his injuries are directly attributable to Deputy Dunn, Wilson's allegations do not demonstrate a valid claim for excessive force in this instance.

Notably, Wilson has not filed a response to the motion for summary judgment and he has not refuted the evidence presented in this case. In the summary judgment context, it is the plaintiff who must demonstrate the existence of at least a genuine factual dispute relevant to the determination of the alleged constitutional violation. *See Gobert v. Caldwell*, 463 F.3d 339, 348 (5th Cir. 2006). "The plaintiff bears the burden of negating the defense and cannot

rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact." *Id.* (quoting *Michalik v. Hermann*, 422 F.3d 252, 263 (5th Cir. 2005) (citation omitted)).  Wilson's unsupported allegation that excessive force was used is not sufficient raise a genuine issue of material fact on whether Deputy Dunn committed a constitutional violation, much less the violation of a clearly established right under the circumstances of this case.  *See Babb v. Dorman*, 33 F.3d 472, 478 (5th Cir. 1994) (noting that an arrestee's "conclusory allegation that [the arresting officer] purposefully deprived him of his constitutional rights is insufficient to subject [the officer] 'either to the costs of trial or to the burdens of broad-reaching discovery'") (quoting *Harlow*, 457 U.S. at 817-18).  Accordingly, the defendants are entitled to summary judgment on this issue.

### 2.    Objective Reasonableness

Alternatively, even assuming that a constitutional violation occurred, Wilson's allegations are insufficient to show that Deputy Dunn failed to act "in an objectively reasonable manner in view of the existing law and facts available to [him]." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993), *cert. denied*, 511 U.S. 1019 (1994) (emphasis added).  If reasonable public officials could differ as to whether the defendant's actions were lawful, the defendant is entitled to immunity. *See Malley*, 475 U.S. at 341 (1986).  "Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)).

Where qualified immunity is asserted, Wilson, as the plaintiff, has the burden to produce admissible evidence that raises a genuine issue of material fact on whether the defendant's actions were objectively unreasonable under the circumstances in view of existing law and the facts known to him.  *See Michalik*, 422 F.3d at 262.  Wilson does not meet that burden here.  As outlined above, the summary judgment record reflects that Deputy Dunn encountered two burglary suspects late at night and that both were resisting orders to show him their hands so that Deputy Dunn could check for weapons.  Deputy heard two shots fired at him from where Wilson was standing and returned fire, after which Wilson fled the scene at a high rate of speed.  Wilson's unsupported allegations (that Deputy Dunn used deadly force by shooting at him without necessity and used excessive force by striking and punching him during the arrest) are not sufficient to raise a genuine issue of material fact on whether the actions taken were unreasonable under the circumstances; nor are these allegations sufficient to overcome the defendant's assertion of qualified immunity in this instance.  The Court concludes, therefore, that summary judgment on the defendant's assertion of qualified immunity is warranted.

## C.     Claims Against Harris County Sheriff Thomas

The defendants argue that Wilson fails to state a valid claim against Harris County Sheriff Thomas.  Wilson does not allege that Sheriff Thomas had any personal involvement with the incident outlined in his complaint.  Wilson appears to sue Sheriff Thomas in his capacity as a supervisory official or policy maker for Harris County.  Thus, Wilson's claims against Sheriff Thomas in his official capacity are construed as claims against Harris

County.[9]  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996).

A municipality may not be held liable for a civil rights violation under a theory of *respondeat superior* or vicarious liability.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003).  A municipality can be found liable pursuant to 42 U.S.C. § 1983, only where the municipality itself causes the constitutional violation at issue, for example, by establishing an unconstitutional policy or custom.  *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  To recover under these circumstances, a plaintiff must demonstrate "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Wilson does not meet his burden to show that there was a causal connection between a particular policy and the mistreatment alleged in the complaint. At best, Wilson alleges that Sheriff Thomas was "negligent" in training his deputies in the proper use of force. To

---

[9]    The defendants note that Wilson cannot make a claim against the Harris County Sheriff's Department, which lacks the requisite capacity to be sued.  *See* FED. R. CIV. P. 17; *Maxwell v. Henry*, 815 F. Supp. 213, 215 (S.D. Tex. 1993).  In Texas, a county sheriff's department is not a legal entity capable of being sued, "absent express action by the superior corporation (the county, in the case of the sheriff's department) 'to grant the servient agency with jural authority.'" *Jacobs v. Port Neches Police Dep't*, 915 F. Supp. 842, 844 (E.D. Tex. 1996) (quoting *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991)).  Because it is merely a department within Harris County, the Sheriff's Department does not have a separate legal existence and cannot be a proper party.

succeed with a failure-to-train claim, a plaintiff must establish the following three criteria: "(1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." *Baker*, 75 F.3d at 200.

The defendants have provided a copy of the Harris County Sheriff's Department policy on the use of force. (Doc. # 25, Exhibit 8). To the extent that Wilson claims that Deputy Dunn was negligently trained, Wilson does not allege or show that there was any particular defect in the training provided and he does not demonstrate how that training was inadequate. Wilson's bare allegation that the training policy is negligent is insufficient to establish the requisite deliberate indifference and will not support a claim under 42 U.S.C. § 1983. *See Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000) (citations omitted). Because Wilson's allegations are insufficient to establish municipal liability on the part of Harris County or Sheriff Thomas, the defendants' motion for summary judgment on this issue is granted.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.    The defendants' motion for summary judgment (Doc. # 25) is **GRANTED**.

2.    The complaint in this case is **DISMISSED** with prejudice.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Houston, Texas, on  June 18th, 2008.

28

Nancy F. Atlas
United States District Judge